FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MEYERS DIVISION**

2009 MAR 19  PM 12: 47

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLOR?
FORT MYERS FLORIDA

DUANE ANKNEY

   Plaintiff,

v.

KNAUF GIPS KG, KNAUF PLASTERBOARD
(TIANJIN) CO., LTD., KNAUF PLASTERBOARD
(WUHU) CO. LTD., KNAUF PLASTERBOARD
(DONGGUAN) CO. LTD., BANNER SUPPLY CO.,
ROTHCHILT INTERNATIONAL LTD., USG
CORPORATION, L&W SUPPLY CORPORATION
d/b/a SEACOAST SUPPLY, LA SUPREMA
TRADING, INC., LA SUPREMA ENTERPRISE,
INC., BLACK BEAR GYPSUM SUPPLY, INC.,
INDEPENDENT BUILDERS SUPPLY
ASSOCIATION, INC.,

   Defendants.

_____/

Civil Action No.: _____

2: 09-cv- 166-FtM- 99 SPG

**UNASSIGNED**

**SHERI POLSTER CHAPPELL**
**U.S. MAGISTRATE JUDGE**

## CLASS ACTION COMPLAINT

  Plaintiff, Duane Ankney, brings this class action on behalf of himself and all other

similarly situated owners and residents of residential homes and buildings in the State of Florida

and a subclass of other similarly situated owners and residents of residential homes and buildings

in other affected States set forth herein, containing drywall that is inherently defective because it

releases sulfide gases and other chemicals that cause severe property damage, and potential

health hazards. The drywall has been manufactured, exported, imported, distributed, delivered,

supplied, inspected, marketed, and/or sold by Defendants, Knauf Gips KG ("Knauf Gips");

Knauf Plasterboard (Tianjin) Co., LTD ("Knauf Tianjin"); Knauf Plasterboard (Wuhu) Co. LTD

("Knauf Wuhu"); Knauf Plasterboard (Dongguan) Co. LTD ("Knauf Dongguan"); (all Knauf-

related entities are collectively referred to herein as "Knauf"). In support thereof, Plaintiff states as follows:

## NATURE OF ACTION

1.  Defendants' drywall used in the homes of Plaintiff and the Plaintiff Class Members is inherently defective because it releases sulfide gases and other chemicals that create noxious, dangerous and "rotten egg-like" odors, and results in severe corrosion and other property damage to air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property").

2.  The defects in Defendants' drywall (the "Defects") are latent and existed in Defendants' drywall at the time of installation regardless of the way the product was installed, maintained, and/or painted. Each of the defendants concealed the defective nature of the drywall, until very recently.

3.  As a result of Defendants' conduct as alleged herein, Plaintiff and thousands of others Class Members in Florida and in other affected states have suffered property damage by owning homes containing inherently defective drywall that has caused damage to their homes and Other Property.

4.  Plaintiff and Class Members have incurred or will incur hundreds of thousands of dollars in damages including, but not limited to: repair/replacement of homes, buildings, damage to other Property, any materials contaminated or corroded by the drywall, including incidental and consequential damages, as well as stigma damages.

5.  Further, as a result of Defendants' conduct as alleged herein, Plaintiff and thousands of others Class Members in Florida and other persons located in Alabama, California,

Georgia, Hawaii, Louisiana, Mississippi, Missouri, New York, North Carolina, Pennsylvania, Texas, Virginia and Washington (the "Building Owner States") have suffered harm and/or been exposed to an increased risk of harm and thus have need for injunctive and/or equitable relief in the form of emergency notice, environmental monitoring, and medical monitoring.

6.  Plaintiff brings this action on behalf of a Class of all similarly situated owners and residents of residential homes and buildings in the State of Florida and the other Building Owner States that contain defective, hazardous, or dangerous drywall manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants.

7.  Plaintiff also brings claims on behalf of an additional subclass against the proposed defendant class of builder/developers of the affected homes.

## JURISDICTION PARTIES AND VENUE

8.  This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act.  Plaintiff and Defendants are citizens of different states and the amount in controversy of this Class action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

9.  Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1-2) because at least one of the Defendants resides in this jurisdiction and a substantial amount of the events and occurrences giving rise to the claim occurred in this District, or a substantial part of the property that is the subject of this action is situated in this district.  Plaintiff also owns a home with Defendants' defective drywall located in Bonita Springs, Florida.

## PLAINTIFF

10.    Plaintiff, Duane Ankney, is an individual residing in Bonita Springs, Florida and has

defendants defective drywall in his home.  As a result of the defective drywall, he has sustained substantial damages.

## DEFENDANTS

### Manufacturers - KNAUF Entities

11.  Defendant Knauf Gips is a German corporation which transacts business in the State of Florida.

12.  Knauf Gips manufacturers and distributes building materials and systems in the United States and worldwide.

13.  Knauf has more than 100 production plants including in the United States and worldwide.

14.  In 1995, Knauf began manufacturing drywall in China.  In 1997, 2000, and 2001 Knauf established three plasterboard plants located in Wuhu, Tianjin and Dongguan.

15.  Knauf Gips, together with its agents, subsidiaries, and/or affiliates (including Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) provides building materials and systems to customers in over 50 countries, including the United States, and more particularly, the State of Florida.

16.  Knauf Gips provided defective drywall to Plaintiff and the proposed classes' homes and concealed the existence of the defect from the Plaintiff.

17.  The Court has personal jurisdiction over Defendant Knauf Gips pursuant to federal law, Florida's Long-Arm Statute §48.193(2), and due process because:

> a.  Knauf Gips has caused injury to Plaintiff and Class Members in Florida that arose out of the acts and omissions that occurred outside of the State of Florida during the relevant period of time, namely, the negligent design and manufacturing of an

unreasonably dangerous drywall that caused property damages and potential

personal injury damages to Plaintiff and Class Members as set forth more fully

herein in the State of Florida; and

b.   Knauf Gips has engaged in substantial and not isolated activity within Lee County

by: 1) having delivered tons of defective drywall into this District; 2) having the

defective drywall reach the ultimate consumer, Plaintiff and Class Members who

had the defective drywall installed in their homes; and 3) selling and marketing

the defective drywall in this District and the State of Florida.

18.   Knauf Gips improperly manufactured, marketed, and later distributed the subject

defective drywall in the United States. Defendant also failed to provide adequate warnings

regarding the hazardous and defective nature of Chinese drywall in the United States, even after

it had knowledge of the defective nature of the drywall.

19.   At all material times hereto, Knauf Gips supervised, operated, trained, and otherwise

exercised control and/or had the right to control the operations of Knauf Tianjin, Knauf Wuhu,

and Knauf Dongguan, and their agents, apparent agents, and employees.

20.   From 1997 through 2001, Knauf Gips established three plasterboard plants located in

Wuhu, Tianjin, and Dongguan, China, respectively.

21.   The quality of all Knauf Gips' Chinese drywall plants in China is supervised, overseen,

and controlled according to the requirements of Knauf Gips' headquarters in Germany.

22.   Knauf Tianjin, Knauf Wuhu, Knauf Dongguan and their employees are the actual and/or

apparent agents of Knauf Gips.

23.   Upon information and belief, Knauf Gips, together with its agents, subsidiaries and/or

affiliates (including Knauf Tianjin, Knauf Wuhu and Knauf Dongguan) manufactured, exported,

imported, distributed, delivered, supplied, inspected, marketed, and/or sold and placed within the stream of commerce drywall with the expectation that the drywall would be purchased by thousands of consumers, within the State of Florida and in the other Building Owner States.

24.    Upon information and belief, Knauf Gips by itself and/or through its agents, subsidiaries, and/or affiliates (including Knauf Tianjin, Knauf Wuhu and Knauf Dongguan) has continuously and systematically distributed and sold drywall to numerous purchasers in the State of Florida and elsewhere with the knowledge that its drywall would be and is installed in numerous homes in Florida and other states.

25.    As discussed more fully below, Knauf Gips by itself and/or through its agents, subsidiaries and affiliates (including Knauf Tianjin, Knauf Wuhu and Knauf Dongguan) manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold, directly and indirectly, to certain suppliers in the State of Florida, including Defendants Banner Supply, Rothchilt and others set forth in paragraph 61through 67 herein, defective Chinese drywall that was installed in homes being built in Florida, thereby causing substantial damage to Plaintiff and Class Members in Florida.

26.    Knauf Gips, each Knauf Entity, (Defendants Knauf Tianjin, Knauf Wuhu and Knauf Dongguan) participated in the wrongful acts herein.

27.    Knauf Gips, and each named Knauf Entity, (Defendants Knauf Tianjin, Knauf Wuhu and Knauf Dongguan) also acted in joint enterprise, joint venture and as each other's agent within the course and scope of said agency.

28.    Defendant Knauf Gips is the parent corporation of the Knauf Entities (Defendants Knauf Tianjin, Knauf Wuhu and Knauf Dongguan). Knauf Gips individually participated, ratified, approved and directed the improper or illegal acts and omissions described herein.

29.  Upon information and belief, tens of millions of square feet of Defendant Knauf Gips defective drywall was used in the construction of Florida homes between 2004 and the present.

30.  Domestic builders, suppliers, and importers began bringing significant stocks of foreign manufactured drywall into the United States.

31.  At least 600 million pounds of Chinese drywall came into the United States from approximately 2004 to 2006 -- enough to construct 70,000 average-size homes.

32.  Over 50 percent of the Chinese drywall that came into the United States came in through Florida ports.

33.  More than 300 million pounds of Chinese drywall were off-loaded in Florida, including Miami, Port Everglades, Tampa, as well as Port Manatee, Pensacola, Port Canaveral, and Jacksonville.

34.  At least 37 million pounds of Knauf drywall was shipped directly from three sites in China to Florida through Tampa and Port Canaveral.

35.  In the spring of 2006, the cargo ship *Great Immensity* unloaded one shipment of more than 16 million pounds of Chinese drywall manufactured by Knauf Tianjin -- enough to make approximately 1,700 homes. The *Great Immensity* unloaded shipments at more than two dozen ports throughout the United States, including seven in Florida.

36.  Shipping records show coordination between Knauf's Chinese subsidiaries including sharing the same vessel to transport their product to the U.S. In April 2006, the *YongAn Cheng* took three shipments from Knauf Wuhu and a fourth from Knauf Dongguang to the U.S. All were imported by United States Gypsum Corporation.

37.  Many builders in Florida, including W.C.I., Engle Homes and Taylor Morrison have admitted using Knauf Chinese drywall in communities throughout Florida.

**Knauf Tianjin**

38. Upon information and belief, Defendant, Knauf Tianjin, is an international corporation organized under the laws of China doing business in the State of Florida.

39. Defendant Knauf Tianjin manufactured and distributed defective drywall that is in Plaintiff's home and/or the proposed class.

40. The Court has personal jurisdiction over Defendant Knauf Tianjin pursuant to federal law, Florida's Long-Arm Statute §48.193(2), and due process because:

    a. Knauf Tianjin has caused injury to Plaintiff and Class Members in Florida that arose out of the acts and omissions that occurred outside of the State of Florida during the relevant period of time, namely, the negligent design and manufacturing of an unreasonably dangerous drywall that caused property damages and potential personal injury damages to Plaintiff and Class Members as set forth more fully herein in this matter in the State of Florida; and

    b. Knauf Tianjin has engaged in substantial and not isolated activity within Lee County by: 1) having delivered defective drywall into this District; 2) having the defective drywall reach the ultimate consumer, Plaintiff and Class Member homeowners who had the defective drywall installed in their homes; and 3) selling and marketing the defective drywall in this District and the State of Florida.

41. Knauf Tianjin improperly manufactured, marketed, and distributed the subject defective drywall in the United States. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United States.

**Knauf Wuhu**

42.   Upon information and belief, Defendant, Knauf Wuhu, is an international corporation organized under the laws of China transacting business in the State of Florida.

43.   Defendant Knauf Wuhu manufactured and distributed defective drywall that is in Plaintiff's and/or the class members' homes and concealed the existence of the defect.

44.   The Court has personal jurisdiction over Defendant Knauf Wuhu pursuant to federal law, Florida's Long-Arm Statute §48.193(2), and due process because:

> a.   Knauf Wuhu has caused injury to Plaintiff and Class Members in Florida that arose out of the acts and omissions that occurred outside of the State of Florida during the relevant period of time, namely, the negligent design and manufacturing of an unreasonably dangerous drywall that caused property damages and potential personal injury damages to Plaintiff and Class Members as set forth more fully herein in this matter in the State of Florida; and

> b.   Knauf Wuhu has engaged in substantial and not isolated activity within this District by: 1) having delivered defective drywall into this District; 2) having the defective drywall reach the ultimate consumer, Plaintiff and Class' Member homeowners who had the defective drywall installed in their homes; and 3) selling and marketing the defective drywall in this District and the State of Florida.

45.   Knauf Wuhu improperly manufactured, marketed, and later distributed the subject defective drywall in the United States. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United, States.

**Knauf Dongguan**

46.   Upon information and belief, Defendant, Knauf Dongguan, is an international corporation organized under the laws of China doing business in the State of Florida.

47.   Defendant Knauf Dongguan manufactured and distributed defective drywall that is in Plaintiff's and/or one of class members' homes.

48.   The Court has personal jurisdiction over Defendant Knauf Dongguan pursuant to federal law, Florida's Long-Arm Statute §48.193(2), and due process because:

   a.   Knauf Dongguan has caused injury to Plaintiff and Class Members in Florida that arose out of the acts and omissions that occurred outside of the State of Florida during the relevant period of time, namely, the negligent design and manufacturing of an unreasonably dangerous drywall that caused property damages and potential personal injury damages to Plaintiff and Class Members as set forth more fully herein in this matter in the State of Florida; and

   b.   Defendant Knauf Dongguan engaged in substantial and not isolated activity within this District by: 1) having delivered defective drywall into this District; 2) having the defective drywall reach the ultimate consumer, Plaintiff and Class Member homeowners who had the defective drywall installed in their homes; and 3) selling and marketing the defective drywall in this District and the State of Florida.

49.   Knauf Donngguan improperly manufactured, marketed, and later distributed the subject defective drywall in the United States. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United

States, even after it learned of the defective nature of the product.

50. Knauf also maintains and transacts business in the United States at One Knauf Drive, Shelbyville, Indiana and exports products from International Building Products Corporation, located in Miami, Florida.

**Defendant Distributors/Suppliers**

**Defendant Banner Supply**

51. Defendant Banner Supply is a Florida corporation with its principal place of business located in the State of Florida.

52. Defendant Banner Supply exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall in the state of Florida. Directly or indirectly through agents, affiliates or co-conspirators, Defendant Banner Supply's acts or omissions related to defective Drywall have injured Plaintiff and Class Members as alleged herein.

**Defendant Rothchilt**

53. Defendant Rothchilt is a foreign corporation doing business in the State of Florida.

54. Defendant Rothchilt exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall in the state of Florida. Directly or indirectly through agents, affiliates or co-conspirators, Defendant Rothchilt's acts or omissions related to defective Drywall have injured Plaintiff and Class Members as alleged herein.

55. Defendant Rothchilt manufactured and distributed defective drywall that is in Plaintiff's and/or one of the class members' homes.

56. The Court has personal jurisdiction over Defendant Rothchilt pursuant to federal

law, Florida's Long-Arm Statute §48.193(2), and due process because:

      a.  Rothchilt has caused injury to Plaintiff and Class Members in Florida that arose out of the acts and omissions that occurred outside of the State of Florida during the relevant period of time, namely, the negligent design and manufacturing of an unreasonably dangerous drywall that caused property damages and potential personal injury damages to Plaintiff and Class Members as set forth more fully herein in this matter in the State of Florida; and

      b.  Rothchilt has engaged in substantial and 'not isolated activity within this District by: 1) having delivered defective drywall into this District; 2) having the defective drywall reach the ultimate consumer, Plaintiff and Class Member homeowners who had the defective drywall installed in their homes; and 3) selling and marketing the defective drywall in this District and the State of Florida.

57.  Rothchilt improperly manufactured, marketed, and later distributed the subject defective drywall in the United States. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United States.

**Other Distributors/Suppliers**

58.  Defendants Knauf Tianjin and/or Knauf Gips have continuously and systematically distributed and sold drywall to numerous purchasers in the State of Florida and their drywall was installed in numerous homes in Florida. Defendants Knauf Tianjin and/or Knauf Gips manufactured and sold, directly and indirectly, to certain suppliers in the State of Florida, including Defendants USG, Seacoast, La Suprema Trading, La Suprema

Enterprise, Black Bear, IBSA, Rothchilt and/or Banner, defective gypsum drywall that was installed in Plaintiff's home and the homes of the Plaintiff Class Members. Moreover, Defendants Knauf Gips and/or Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Florida and by hiring agents within the State of Florida to carry out the very acts at issue in this lawsuit.

59.    Each of these named distributors/suppliers of the Knauf Defendants exported, imported, delivered, supplied, marketed and sold defective drywall in the State of Florida which injured Plaintiff and Class Members.

60.    This Court has personal jurisdiction over Defendants Knauf Gips and Knauf Tianjin under Florida Statutes §418.193(2) because they are "engaged in substantial and not isolated activity within this state." *See* Fla. Stat. §48.193(2). Additionally, Plaintiff's and the Plaintiff Class Members' causes of action arise from Defendants Knauf Gips and Knauf Tianjin personally or through their agents, causing injury to property within the State of Florida arising out of acts or omissions of Defendants Knauf Gips and Knauf Tianjin outside the State of Florida, and at the time of the injury, products, materials, or things manufactured by Defendants Knauf Gips and Knauf Tianjin were used and consumed within the State of Florida in the ordinary course of commerce, trade or use. *See* Fla. Stat. §48.193(l)(f)(2).

61.    Defendant USG is a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, Illinois 60661, and at all times material, was authorized to and conducted business in the State of Florida. Defendant USG, together - with its various affiliates, including Defendant Seacoast, is the nation's largest distributor of

drywall and related building products.

62. Another of Knauf's affiliates, Gebr Knauf Verwaltungsgsellschaft KG, owns a substantial stake in Defendant USG.

63. Defendant Seacoast is a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, Illinois 60661, and at all times material, was authorized to and conducted business in the State of Florida. Defendant Seacoast has numerous supply centers in the State of Florida. Defendant Seacoast is a subsidiary of Defendant USG.

64. Defendant La Suprema Trading is a Florida corporation with its principal place of business located at 2221 NE 164th Street, North Miami Beach, Florida.

65. Defendant La Suprema Enterprise is a Florida corporation with its principal place of business located at 2221 NE 164th Street, North Miami Beach, Florida.

66. Defendant Black Bear is a Florida corporation with its principal place of business located in Largo, Florida.

67. Defendant IBSA is a member owned buying organization with its principal place of business located in Smithfield, North Carolina, and is authorized to do and doing business in the State of Florida.

68. This Court has personal jurisdiction over Defendant Rothchilt and the other named distributors/suppliers under Florida Statutes §48.193(2) because they "engaged in substantial and not isolated activity within this state." See Fla. Stat. §48.193(2). Additionally, Plaintiff's and the Plaintiff Class Members' causes of action arise from the Defendant Suppliers personally or through its agents, causing injury to property within the State of Florida arising out of acts or omissions of these Defendants including outside the

State of Florida, and at the time of the injury, products, materials, or things manufactured by Defendant Rothchilt were used and consumed within the State of Florida in the ordinary course of commerce, trade or use. *See* Fla. Stat. §48.193(1)(0(2).

## GENERAL ALLEGATIONS

69.   In order to form drywall, gypsum must be "calcined," or partially dehydrated by heating.

70.   When gypsum is heated, it loses about three quarters of its water and becomes hemihydrate gypsum which is soft and can be easily ground to a powder called hemihydrate gypsum plaster.

71.   The gypsum powder is then mixed with water to form a paste or slurry.

72.   While the hemihydrate gypsum plaster is in slurry form, it is poured between two paper layers to make drywall.

73.   Drywall is formed by sandwiching a core of wet gypsum between two sheets of heavy paper or fiberglass mats. When the core sets and is dried in a large drying chamber, the "sandwich" becomes rigid and strong enough for use as' a building material.

74.   The paste or slurry is typically mixed with fiber (usually paper and/or fiberglass), plasticizer, foaming agent, potash as an accelerator, starch or other chelate as a retarder, various additives that increase mildew and fire resistance (fiberglass or vermiculite), and water.

75.   Drywall may consist of two other materials with sulfur content: alkyl ethoxy sulfates as foaming agents and lignin or napthalene sulfonates as dispersing agents.

76.   Upon information and belief, Defendants' drywall contained naturally mined gypsum and synthetic gypsum manufactured from coal combustion byproducts.

77.   The Defendants' gypsum product, mined or synthetic, is defective as it breaks down into sulfate ions which in turn can be chemically transformed into hydrogen sulfide gas and other sulfide gases.  The product could not pass any municipal building code in Lee or Dade County and should not have been used, but for the fraud of the Defendants.

78.   The problem of sulfide emissions from drywall is well-understood in the drywall industry and has been studied for, many years.

79.   The Defendants knew that the level of sulfides emitted from drywall may depend, in part, on contamination of the drywall with sulfur materials or the use of contaminated gypsum materials.

80.   An independent testing firm has stated that: "We have definitely identified that a combination of sulfide gases are the cause of the corrosion of the coils. The substances we've found are well known to cause that kind of corrosion."

81.   The firm's December 2008 results found three sulfide gases: carbon disulfide, carbonyl sulfide and dimethyl sulfide.

82.   According to published reports, however, some independent environmental testing firms and building experts have said the source of the drywall problem is waste materials from the scrubbers of coal-fired power plants used to make the drywall in China.  The Defendants have refused to disclose the precise defects or their knowledge to Plaintiff and members of the class.

83.   Knauf's 2009 statement also noted: "Until last year in Florida, no complaint had been raised and no product had been rejected because of odor or impacts to copper in the nine years of [Knauf Tianjin's] operation." (Emphasis added).

84.   However, Knauf received complaints from builders and contractors about "rotten

egg" smells coming from its Chinese-manufactured drywall as far back as 2005, but failed
to take appropriate action.

85.   In November 2006, in response to reports of odors associated with its drywall, the
company hired the Center for Toxicology and Environmental Health, L.L.C. (CTEH) to
conduct an air quality investigation in five homes in Florida.

86.   Knauf's 2006 testing revealed, however, that its product released detectable,
above-background levels of various sulfur containing compounds. In particular, Knauf's
testing revealed the presence of iron disulfide from its Chinese Drywall as the likely source
of the sulfur smells.  Knauf's testing agency declared: "These data indicate that certain
naturally-occurring sulfur-containing *compounds can be emitted from the Knauf Tianjin
product at concentrations higher than present in background air."* (emphasis added).

87.   One importer acknowledged in published reports that the defective Chinese
Drywall was "well known throughout the industry" by 2007.

88.   No member of the Class could have discovered the existence of the defect in the
Chinese-manufactured drywall until press reports about the defects were released in
December 2008.

89.   Hydrogen sulfide ("H2S"), one of the chemicals found to have been released from
drywall, is considered a broad-spectrum poison, meaning that it can poison several different
systems in the body, although the nervous system is most affected.

90.   The toxicity of H2S is comparable with that of hydrogen cyanide. It forms a
complex bond with iron in the mitochondrial cytochrome enzymes, thereby blocking
oxygen from binding and stopping cellular respiration.

91.   Exposure to lower concentrations of sulfides can result in eye irritation, a sore

throat and cough, nausea, shortness of breath, and fluid in the lungs.

92. Long-term, low-level exposure to sulfides has been associated with fatigue, loss of appetite, headaches, irritability, poor memory, and dizziness. Chronic exposures to low levels of sulfides has also been implicated in increased miscarriage and reproductive health issues.

93. Defendants manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold defective drywall, which was unreasonably dangerous in its normal use in that the drywall caused corrosion and property damage to Other Property in Plaintiff and Class Members' homes and caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards, other health concerns, and/or significantly increased the risk of contracting a serious latent disease.

94. As a direct and proximate result of Defendants' actions and omissions, Plaintiff and the Plaintiff Class Members' homes and bodies have been exposed to Defendants' drywall and the corrosive and harmful effects of the sulfide gases and other chemicals being released from these proven hazardous substances.

95. As a direct and proximate result of Defendants' defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from these products, the Plaintiff and the Class Members have suffered, and continue to suffer damages. These damages include, but are not limited to, costs of inspection as well as the costs and expenses necessary to remedy, replace and remove the defective drywall and Other Property that has been affected.

96. As a direct and proximate result of Defendants' defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from these products, Plaintiff

and Class Members have been exposed to above-background levels of sulfides and other harmful chemicals, have been placed at an increased risk of disease, and have need for injunctive relief in the form of emergency notice, environmental testing and monitoring, and medical monitoring.

**Conditions Precedent**

97.   All notice required by Chapter 558, Florida Statutes, and conditions precedent to bringing this action have been met or will have been met or were waived by Defendants.

**CLASS ACTION ALLEGATIONS**

98.   Plaintiff brings this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of himself and the following Class and Subclasses (collectively referred to herein as "the Class") comprised as follows:

(a) All owners and residents of residential homes and commercial buildings in the State of Florida containing drywall manufactured, sold, distributed, or supplied by Defendants that emit excessive levels of sulfur. All members of the class are seeking compensatory damages, injunctive and/or equitable relief for environmental and medical monitoring. Defendant, its officers, directors, subsidiaries, or any person or other entity related to, affiliated with or employed by Defendant are excluded from the class definition.

(b) All owners and residents of residential homes and commercial buildings in Building Owner States of Alabama, California,

Georgia, Hawaii, Louisiana, Mississippi, Missouri, New York,
North Carolina, Pennsylvania, Texas, Virginia and Washington
containing drywall manufactured, sold, distributed, or supplied by
Defendants that emit excessive levels of sulfur. All members of
the class are seeking compensatory damages, injunctive and/or
equitable relief for environmental and medical monitoring.
Defendant, its officers, directors, subsidiaries, or any person or
other entity related to, affiliated with or employed by Defendant
are excluded from the class definition.

99.   It is further averred upon information and belief that heretofore named and
unnamed builders were responsible for constructing the drywall in the named Plaintiff and
Class members' homes. However, this information is in the exclusive control and
possession of the builders and manufacturing Defendants. Following discovery, Plaintiff
contemplates that this information will be made available and the responsible builders will
either be specifically designated and/or joined in this action as members of the Defendant
class of builders.

100.    Upon information and belief, the Defendants' defective drywall was
installed in thousands of homes in the State of Florida and the other Building Owner States,
as of the present date; therefore, the Class is sufficiently numerous so that the joinder of all
members of the Class in a single action is impracticable.

101.    There are thousands of putative Class members involved in this case.

## COMMONALITY

102.    There are numerous, common questions of law and fact that predominate

over any questions affecting only individual members of the Class. Among these common questions of law and fact are the following:

     a.   whether Defendants manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall products;

     b.   whether Defendants' drywall contains latent and/or manifest defects in the form of emitting sulfides and other chemicals;

     c.   whether Plaintiff and Class Members are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful conduct;

     d.   whether Plaintiff and Class Members are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful conduct;

     e.   whether Defendants' conduct in manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling their drywall breached the duty of care owed by Defendants to Plaintiff and Class Members;

     f.   whether Defendants are strictly liable for selling a defective product;

     g.   whether Defendants failed to warn Plaintiff of the dangers and hazards related to the defective drywall;

     h.   whether Builder/Developer Defendants conduct constitutes negligence;

     i.   whether Builder/Developer Defendants breached warranties;

     j.   whether Builder/Developers Defendants breached implied warranties of merchantability;

k.  whether Defendants breached implied warranties of fitness for a particular
    purpose;

l.  whether Defendants violated the Florida Deceptive Trade Practices Act;

m.  whether Defendants created a private nuisance;

n.  whether Defendants should create and fund an emergency notice program,
    environmental monitoring, and/or a medical monitoring program;

o.  whether Defendants should give notice to Plaintiff and Class Members under
    Fed. R. Civ. P. 23(b) 2 or (d) of the defects in drywall, of the need for
    necessary home inspection, and of the potential health risks associated with
    the drywall's defects; and

p.  whether Plaintiff and Class members are entitled to attorney's fees, and if so,
    in what amount.

## TYPICALITY

103.    The legal claims of Plaintiff are typical of the legal claims of other members
of the Class. Plaintiff has the same legal interests as other members of the Class.

104.    The Plaintiff and each member of the Class have defective drywall in their
homes. Due to the drywall in Plaintiff and Class Members' homes, Plaintiff and Class
Members suffered damages in the form of property damages, and the need for injunctive
and equitable relief, as set forth herein.

105.    Plaintiff and Class Members' homes and personal property have sustained
the same type of property damage and potential physical harm due to the defective drywall.
Thus, the legal remedies available to Plaintiff and the Class Members are the same due to
the wrongful conduct of Defendants. The Plaintiff's claims satisfy the typicality

requirement.

## ADEQUACY OF REPRESENTATION

106.      Plaintiff is an adequate representatives of the Class and together with legal counsel will fairly and adequately protect the interests of the Class. Plaintiff has no conflicts with the Class and are committed to the vigorous prosecution of this action and have retained competent counsel experienced in litigation of this nature to represent them. Plaintiff anticipates no difficulty in the management of this litigation as a class action. Moreover, the class representative's interests are aligned with the Class Members and it is unlikely there will be a divergence of viewpoint.

107.      The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and litigation involving defective and harmful products. Counsel will fairly and adequately protect the interests of the class.

## RULE 23(b)(1) REQUIREMENTS

108.      The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

## RULE 23(b)(2) REQUIREMENTS

109.      The claims for injunctive relief in this case are certifiable under Fed. R. Civ.

P. 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

## RULE 23(b)(3) REQUIREMENTS

110.    The common questions set forth above predominate over Class Members' individual issues.

111.    A class action is superior to other methods of dispute resolution in this case. The Class members have an interest in class adjudication rather than individual adjudication because of the overlapping rights. It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class members would protect their rights on their own without this class action case. Management of the class will be efficient and far superior to the management of individual lawsuits.

## COUNT I
## NEGLIGENCE
### (Against All Manufacturer Defendants KnaufGips, Knauf Tianjin, Knauf Wuhu and Knauf Dongguan)

112.    Plaintiff adopts and restate paragraphs 1 through 111 as if fully set forth herein.

113.    Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in the a) design, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling drywall, including a duty to adequately warn of its failure to do the same. Defendants' duty includes, but was not limited to the following:

        a.  using reasonable care in the design of the drywall to prevent it from containing Defects as set forth herein;

b.  using reasonable care in the manufacturing of the drywall to prevent it from containing Defects as set forth herein;

c.  using reasonable care in the exporting of the drywall to prevent it from containing Defects as set forth herein;

d.  using reasonable care in the importing of the drywall to prevent it from containing Defects as set forth herein;

e.  using reasonable care in the distributing of the drywall to prevent it from containing Defects as set forth herein;

f.  using reasonable care in the delivering of the drywall to prevent it from containing Defects as set forth herein;

g.  using reasonable care in the supplying of the drywall to prevent it from containing Defects as set forth herein;

h.  using reasonable care in the inspecting of the drywall to prevent it from containing Defects as set forth herein;

i.  using reasonable care in the marketing of the drywall to prevent it from containing Defects as set forth herein;

j.  using reasonable care in the selling of the drywall to prevent it from containing Defects as set forth herein;

k.  adequately warning and instructing the Plaintiff and Class Members of the Defects associated with drywall;

l.  properly manufacturing the drywall to prevent it from containing the Defects as set forth herein;

m.  properly selecting the gypsum that did not contain excessive levels of sulfur;

n.  recalling or otherwise notifying users at the earliest date that it became
known that the drywall was dangerous and Defective;

o.  advertising and recommending the use of drywall with sufficient knowledge
as to its manufacturing defect and dangerous propensities;

p.  not misrepresenting that the drywall was safe for its intended purpose when,
in fact, it was not;

q.  not manufacturing drywall in a manner which was dangerous to its intended
and foreseeable users;

r.  not exporting and/or importing drywall in a manner which was dangerous to
its intended and foreseeable users;

s.  not distributing, delivering, and/or supplying drywall in a manner which was
dangerous to its intended and foreseeable users;

t.  not concealing information from Plaintiff and Class Members regarding
reports of adverse effects associated with drywall;

u.  not improperly concealing and/or misrepresenting information from the
Plaintiff and Plaintiff Class Members and/or the public, concerning the
severity of risks and dangers of Defendants' drywall and/or the
manufacturing Defect; and

v.  otherwise exercising reasonable care in the design, manufacturing,
exporting, importing, distributing, delivering, supplying, inspecting,
marketing, and/or selling drywall to prevent it from containing Defects as set
forth herein.

114.    Defendants were negligent and breached their duty to exercise reasonable

care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall, including a duty to adequately warn of its failure to do the same. Defendants' negligence included, but was not limited to the following:

a.  failing to use reasonable care in the design of the drywall to prevent it from containing Defects as set forth herein;

b.  failing to use reasonable care in the manufacturing of the drywall to prevent it from containing Defects as set forth herein;

c.  failing to use reasonable care in the exporting of the drywall to prevent it from containing Defects as set forth herein;

d.  failing to use reasonable care in the importing of the drywall to prevent it from containing Defects as set forth herein;

e.  failing to use reasonable care in the distributing of the drywall to prevent it from containing Defects as set forth herein;

f.  failing to use reasonable care in the delivering of the drywall to prevent it from containing Defects as set forth herein;

g.  failing to use reasonable care in the supplying of the drywall to prevent it from containing Defects as set forth herein;

h.  failing to use reasonable care in the inspecting of the drywall to prevent it from containing Defects as set forth herein;

i.  failing to use reasonable care in the- marketing of the drywall to prevent it from containing Defects as set forth herein;

j.  failing to use reasonable care in the selling of the drywall to prevent it from

containing Defects as set forth herein;

k.  failing to adequately warn and instruct the Plaintiff and Class Members of the Defects associated with drywall;

l.  failing to properly manufacture the drywall to prevent it from containing the Defects as set forth herein;

m. failing to properly select the gypsum that did not contain excessive levels of sulfur;

n.  failing to recall or otherwise notify users at the earliest date that it became known that drywall was dangerous and Defective;

o.  advertising and recommending the use of drywall without sufficient knowledge as to its manufacturing Defect and dangerous propensities;

p.  misrepresenting that drywall was safe for its intended purpose when, in fact, it was not;

q.  manufacturing drywall in a manner which was dangerous to its intended and foreseeable users;

r.  exporting and/or importing drywall in a manner which was dangerous to its intended arid foreseeable users;

s.  distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;

t.  concealing information from Plaintiff and Class Members regarding reports of adverse effects associated with drywall;

u.  improperly concealing and/or misrepresenting information from the Plaintiff and Plaintiff Class Members and/or the public, concerning the severity of

              risks and dangers of Defendants' drywall and/or the manufacturing Defect; and

    v.   failing to otherwise exercising reasonable care in the design, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall to prevent it from containing Defects as set forth herein.

115.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred severe property damage and related relief to other property and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

116.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the homes; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

117.    Defendants knew or should have known that their wrongful acts and omissions would result in property, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiff, on behalf of all others similarly situated and the Class, demands:

      a. an order certifying the case as a class action;

      b. an order appointing Plaintiff as the Class Representatives of the Class;

      c. an order appointing undersigned counsel and their firms as counsel for the

        Class;

      d. compensatory damages;

      e. post judgment interest;

      f. an award of attorneys' fees to class counsel based upon a common fund theory

        as allowed by Federal law, for the benefits conferred upon the Class and/or as

        allowed by contract or statute;

      g. an award of taxable costs; and,

      h. any and all such further relief as this Court deems just and proper.

## COUNT II
## STRICT LIABILITY
### (Against All **Manufacturer Defendants Knauf Gips, Knauf Tianjin, Knauf Wuhu, Knauf Dongguan**)

118.      Plaintiff adopts and restates paragraphs 1 through 117 as if fully set forth herein.

119.      At all times relevant hereto, Defendants were in the business of designing, manufacturing, exporting, importing, distributing,, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

120.      The drywall, including that installed in the homes of Plaintiff and Class Members were placed by Defendants in the stream of commerce.

121.      Defendants knew that the subject drywall would be used without inspection for defects by consumers.

122.    Defendants intended that the drywall reach the ultimate consumer, such as Plaintiff and Class Members, and it indeed reached Plaintiff and Class Members when it was installed in their homes.

123.    When installed in the Plaintiff and Class Members' homes, the drywall was in substantially the same condition it was when Defendants manufactured, sold, and/or delivered it.

124.    At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

125.    The subject drywall was not misused or altered by any third parties, Plaintiff or Class Members.

126.    The drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, and sold.

127.    The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing and damage Plaintiff' property that caused corrosion of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property") and potential health hazards.

128.    The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too high and emitted various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors for drywall that caused corrosion of air-conditioner

and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property").

129.    The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

130.    The defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to the Plaintiff and Class Members.

131.    The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct the Plaintiff and Class Members of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

132.    Plaintiff and Class Members were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiff and Class Members, acting as a reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

133.    Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Plaintiff and Class Members.

134.    Defendants' defective drywall benefit to Plaintiff and Class Members, if any, was greatly outweighed by the risk of harm and danger to them. Plaintiff and Class Members of the defects rendered the drywall unreasonably dangerous and was the direct and proximate cause of damages to Plaintiff and Class Members.

135.    The defects in the drywall, as well as Defendants' failure to adequately warn

the Plaintiff and Class Members of the defects rendered the drywall unreasonably dangerous and was the direct and proximate cause of damages to Plaintiff and Class Members.

136.    As direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred property damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

137.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the homes; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall, in the home; and other related expenses.

WHEREFORE Plaintiff, on behalf of all others similarly situated and the Class, demand:

> a. an order certifying the case as a class action;
>
> b. an order appointing Plaintiff as the Class Representatives of the Class;
>
> c. an order appointing undersigned counsel and their firms as counsel for the Class;
>
> d. compensatory damages;

e. post judgment interest;

f. an award of attorneys' fees to class counsel based upon a common fund

theory as allowed by Federal law, for the benefits conferred upon the Class

and/or as allowed by contract or statute;

g. an award of taxable costs; and,

h. any and all such further relief as this Court deems just and proper.

**COUNT III**

**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE**
**PRACTICES ACT**
**(Against All Manufacturer Defendants Knauf Gips, Knauf Tianjin,**
**Knauf Wuhu and Knauf Dongguan)**

138.      Plaintiff adopts and restates paragraphs 1 through 111 as if fully set forth

herein.

139.      This is an action for relief under section 501.201, *et.seq.,* Florida Statutes

(The Florida Deceptive and Unfair Trade Practices Act).

140.      Section 501.203(7), Florida Statutes defines "Consumer" as "an individual;

child, by and through its parent or legal guardian; firm; association; joint venture;

partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other

group or combination." Plaintiff and Class Members are "Consumers" within the meaning

of §501.203(7), Florida Statutes.

141.      Section 501.203(8), Florida Statutes defines "Trade or Commerce" as:

[T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or
otherwise, of any good or service, or any property, whether tangible or intangible, or any
other article, commodity, or thing of value, wherever situated. "Trade or Commerce" shall
include the conduct of any trade or commerce, however denominated, including any
nonprofit or not-for-profit person or activity. The advertising, soliciting, providing, offering,
or distributing of dry wall by Defendants to Plaintiff and Class Members is "Trade or
Commerce" within the meaning of section 501.203(8), Florida Statutes.

142.    Section 501.204(1) provides that: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The Defendants acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendants' trade or commerce pursuant to section 501.204, Florida Statutes.

143.    The unconscionable, illegal, unfair and deceptive acts and practices of Defendants violate the provisions of Florida's Deceptive and Unfair Trade Practices Act. Plaintiff and Class Members have suffered actual property damage for which they are entitled to relief pursuant to section 501.211(2), Florida Statutes.

144.    Plaintiff and Class Members are entitled to recover their reasonable attorneys' fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

145.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred property damages and are entitled to recover property damage and monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

146.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for

the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiff, on behalf of all others similarly situated and the Class, demands:

> a. an order certifying the case as a class action;
>
> b. an order appointing Plaintiff as the Class Representatives of the Class;
>
> c. an order appointing undersigned counsel and their firms as counsel for the Class;
>
> d. compensatory damages;
>
> e. post judgment interest;
>
> f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;
>
> g. an award of taxable costs; and,
>
> h. any and all such further relief as this Court deems just and proper.

### COUNT IV
### STRICT LIABILITY
### (Against All Distributor/Suppliers Defendants)

147.    Plaintiff adopts and restates paragraphs 1 through 111 as if fully set forth herein.

148.    As set forth herein, the known distributors/suppliers to date include Defendants; Banner Supply, Rothchilt, Defendants USG, Seacoast, La Suprema Trading, La Suprema Enterprise, Black Bear, IBSA and others to be determined during discovery.

149.    At all times relevant hereto, Defendants were in the business of exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

150.    The drywall, including that installed in the homes of Plaintiff and Class Members were placed by Defendants in the stream of commerce.

151.    Defendants knew that the subject drywall would be used without inspection for defects by consumers.

152.    Defendants intended, that the drywall reach the ultimate consumer, such as Plaintiff and Class Members, and it indeed reached Plaintiff and Class Members when it was installed in their homes.

153.    When installed in the Plaintiff and Class Members' homes, the drywall was in substantially the same condition it was when Defendants distributed, supplied, sold, and/or delivered it.

154.    At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

155.    The subject drywall was not misused or altered by any third parties, Plaintiff or Class Members.

156.    The drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, delivered, and/or sold.

157.    The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing and damage Plaintiff' property that caused corrosion of air-conditioner and refrigerator coils, microwaves, faucets, utensils,

copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property") and potential health hazards.

158.    The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too high and emitted various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors for drywall that caused corrosion of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property").

159.    The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

160.    The defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to the Plaintiff and Class Members.

161.    The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct the Plaintiff and Class Members of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall. .

162.    Plaintiff and Class Members were unaware of the unreasonably dangerous propensities and defective condition of the. drywall, nor could Plaintiff and Class Members, acting as a reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

163.     Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Plaintiff and Class Members.

164.     Defendants' defective drywall benefit to Plaintiff and Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

165.     The defects in the drywall, as well as Defendants' failure to adequately warn the Plaintiff and Class Members of the defects rendered the drywall unreasonably dangerous and was the direct and proximate cause of damages to Plaintiff and Class Members.

166.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred property damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

167.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the homes; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiff, on behalf of all others similarly situated and the Class,

demands:

> a. an order certifying the case as a class action;
>
> b. an order appointing Plaintiff as the Class Representatives of the Class;
>
> c. an order appointing undersigned counsel and their firms as counsel for
> the Class;
>
> d. compensatory damages;
>
> e. post judgment interest;
>
> f. an award of attorneys' fees to class counsel based upon a common fund
> theory as allowed by Federal law, for the benefits conferred upon the
> Class and/or as allowed by contract or statute;
>
> g. an award of taxable costs; and,
>
> h. any and all such further relief as this Court deems just and proper.

<u>COUNT V</u>
**VIOLATION OF THE FLORIDA DECEPTIVE
AND UNFAIR TRADE PRACTICES ACT
(Against All Distributors/Suppliers/Defendants)**

168.    Plaintiff adopts and restates paragraphs 1 through 111 as if fully set forth herein.

169.    This is an action for relief under section 501.201, *et.seq.,* Florida Statutes (The Florida Deceptive and Unfair Trade Practices Act).

170.    Section 501.203(7), Florida Statutes defines "Consumer". as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Plaintiff and Class Members are "Consumers" within the meaning of §501.203(7), Florida Statutes.

171.    Section 501.203(8), Florida Statutes defines "Trade or Commerce" as:

[T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or. Commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity. The advertising, soliciting, providing, offering, or distributing of drywall by Defendants to Plaintiff and Class Members is "Trade or Commerce" within the meaning of section 501.203(8), Florida Statutes.

172.    Section 501.204(1) provides that: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendants' trade or commerce pursuant to section 501.204, Florida Statutes.

173.    The unconscionable, illegal, unfair and deceptive acts and practices of Defendants violate the provisions of Florida's Deceptive and Unfair Trade Practices Act. Plaintiff and Class Members have suffered actual damage for which they are entitled to relief pursuant to section 501.211(2), Florida Statutes.

174.    Plaintiff and Class Members are entitled to recover their reasonable attorneys' fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

175.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred property damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer

wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

## COUNT VI
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against A Defendant Class of All Defendant Builder/Developer Defendants)

176.     Plaintiff adopts and restates paragraphs 1 through 111 as if fully set forth herein.

177.     Defendants were in privity with Plaintiff and Class Members.

178.     At the times Defendants installed, utilized, supplied, inspected, and/or sold drywall for use in the Plaintiff and Class Members' homes, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiff and Class Members' homes for use as a building material, and impliedly warranted the product to be fit for that use.

179.     Defendants' drywall product was placed into the stream of commerce by Defendants in a defective condition and were expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which they were sold.

180.     The drywall was defective because it was not fit for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in Plaintiff and Class Members' homes for use as a building material, because it contained defects as set forth herein.

181.     The Defendants breached the implied warranty of merchantability because the drywall was not fit to be installed in Plaintiff and Class Members' homes as a building

material due to the defects set forth herein.

182.    Defendants had reasonable and adequate notice of the Plaintiff's and the Class Members' claims for breach of implied warranty of merchantability and failed to cure.

183.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred property damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

184.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

185.    Defendants knew or should have known that their wrongful acts and omissions would result in property damage, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiff, on behalf of all others similarly situated and the Class, demands:

        a. an order certifying the case as a class action;

b. an order appointing Plaintiff as the Class Representatives of the Class;

c. an order appointing undersigned counsel and their firms as counsel for the
Class;

d. compensatory damages;

e. post judgment interest;

f. an award of attorneys' fees to class counsel based upon a common fund theory
as allowed by Federal law, for the benefits conferred upon the Class and/or as
allowed by contract or statute;

g. an award of taxable costs; and,

h. any and all such further relief as this Court deems just and proper.

## COUNT VII
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### (Against A Class Of All Defendant Builder/Developer Defendants)

186.    Plaintiff adopts and restates paragraphs 1 through 111 as if fully set forth
herein.

187.    Defendants were in privity with Plaintiff and Class Members.

188.    Defendants' drywall product was placed into the stream of commerce by
Defendants in a defective condition and was expected to, and did, reach users, handlers, and
persons coming into contact with said product without substantial change in the condition
in which it were sold.

189.    The drywall was defective because it was not fit for the specific purpose of
installing in the Plaintiff and Class Members' homes as a building material, for which
Plaintiff and Class Members bought the product in reliance on the judgment of Defendants.

190.    The Defendants breached the implied warranty of fitness for a particular

purpose because the drywall was not fit to be installed in Plaintiff and Class Members homes as a building material due to the defects set forth herein.

191.    Defendants had reasonable and adequate notice of the Plaintiff and the Class Members' claims for breach of implied warranty of merchantability and failed to cure.

192.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred property damage and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

193.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

194.    Defendants knew or should have known that their wrongful acts and omissions would result in property, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiff, on behalf of all others similarly situated and the Class, demands:

    a. an order certifying the case as a class action;

b. an order appointing Plaintiff as the Class Representatives of the Class;

c. an order appointing undersigned counsel and their firms as counsel for the
Class;

d. compensatory damages;

e. post judgment interest;

f. an award of attorneys' fees to class counsel based upon a common fund theory
as allowed by Federal law, for the benefits conferred upon the Class and/or as
allowed by contract or statute;

g. an award of taxable costs; and,

h. any and all such further relief as this Court deems just and proper.

**COUNT VIII**
**VIOLATION OF THE FLORIDA DECEPTIVE**
**AND UNFAIR TRADE PRACTICES ACT**
**(Against A Defendant Class of All Defendant Builder/Developer Defendants)**

195.     Plaintiff adopts and restates paragraphs 1 through 111 as if fully set forth

herein. 225. This is an action for relief under section 501.201, *et.seq.,* Florida Statutes (The

Florida Deceptive and Unfair Trade Practices Act).

196.     Section 501.203(7), Florida Statutes defines "Consumer" as "an individual;

child, by and through its parent or legal guardian; firm; association; joint venture;

partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other

group or combination." Plaintiff and Class Members are "Consumers" within the meaning

of §501.203(7), Florida Statutes.

197.     Section 501.203(8), Florida Statutes defines "Trade or Commerce" as:

[T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental,
or otherwise, of any good or service, or any property, whether tangible or intangible, or
any other article, commodity, or thing of value, wherever situated. "Trade or Commerce"

shall include the conduct of any trade or commerce, however denominated, including any
nonprofit or not-for-profit person or activity.

The advertising, soliciting, providing, offering, or distributing of drywall by Defendants to

Plaintiff and Class Members is "Trade or Commerce" within the meaning of section 501.203(8),

Florida Statutes.

198.     Section 501.204(1) provides that: "[u]nfair methods of competition,

unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of

any trade or commerce are hereby declared unlawful." The Defendants' acts and omissions

as well as their failure to use reasonable care in this matter as alleged in this Complaint

equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in

the conduct of Defendants' trade or commerce pursuant to section 501.204, Florida

Statutes.

199.     The unconscionable, illegal, unfair and deceptive acts and practices of

Defendants violate the provisions of Florida's Deceptive and Unfair Trade Practices Act.

Plaintiff and Class Members have suffered actual damage for which they are entitled to

relief pursuant to section 501.211(2), Florida Statutes.

200.     Plaintiff and Class Members are entitled to recover their reasonable

attorneys' fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

201.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiff

and Class Members have incurred property damages and are entitled to recover monetary

damages for: replacement/repair of their homes; the removal and replacement of all of the

drywall contained in their homes; the replacement of Other Property (air-conditioner and

refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer

wiring, personal property, electronic appliances, and other metal surfaces and household

items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

202.       As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

WHEREFORE Plaintiff, on behalf of all others similarly situated and the Class, demands:

        a. an order certifying the case as a class action;

        b. an order appointing Plaintiff as the Class Representatives of the Class;

        c. an order appointing undersigned counsel and their firms as counsel for the Class;

        d. compensatory damages;

        e. post judgment interest;

        f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;

        g. an award' of taxable costs; and,

        h. any and all such further relief as this Court deems just and proper.

## COUNT IX
## NEGLIGENCE
### (Against A Defendant Class of All Defendant Builder/Developer Defendants)

203.       Plaintiff adopts and restates paragraphs 1 through 111 as if fully set forth

herein.

204.     Defendants owed a duty to Plaintiff and Class Members to exercise
reasonable care in the a) inspecting, b) testing, the drywall they were installing in Plaintiff'
homes, including a duty to adequately warn of its failure to do the same. Defendants' duty
includes, but was not limited to the following:

       a.   using reasonable care in the inspecting of the drywall they installed in
          Plaintiff's homes to discover that it contained Defects as set forth herein and
          not to install the defective drywall in Plaintiff's homes;

       b.   using reasonable care in the testing of the drywall they installed in Plaintiff's
          homes to discover that it contained Defects as set forth herein and not to
          install the defective drywall in Plaintiff's homes;

       c.   adequately warning and instructing the Plaintiff and Class Members of the
          Defects associated with drywall; and

       d.   otherwise exercising reasonable care in the inspecting and testing of the
          drywall they installed in Plaintiff's homes to discover that it contained
          Defects as set forth herein and not to install the defective drywall in
          Plaintiff's homes.

205.     Defendants were negligent and breached their duty to exercise reasonable
care in a) inspecting, b) testing, the drywall they were installing in Plaintiff's homes,
including a duty to adequately warn of its failure to do the same. Defendants'
negligence included, but was not limited to the following:

       a.   failing to use reasonable care in the inspecting of the drywall they installed
          in Plaintiff's homes to discover that it contained Defects as set forth herein

and not to install the defective drywall in Plaintiff's homes;

b.  failing to use reasonable care in the testing of the drywall they installed in Plaintiff's homes to discover that it contained Defects as set forth herein and not to install the defective drywall in Plaintiff's homes;

c.  failing to adequately warn and instructing the Plaintiff and Class Members of the Defects associated with drywall; and

d.  failing to otherwise exercising reasonable care in the inspecting and testing of the drywall they installed in Plaintiff's homes to discover that it contained Defects as set forth herein and not to install the defective drywall in Plaintiff's homes.

206.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred property damages and are entitled to recover monetary damages for: replacement/repair of their homes; the removal and replacement of all of the drywall contained in their homes; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

207.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the homes; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to

having defective drywall in the home; and other related expenses.

208.     Defendants knew or should have known that their wrongful acts and omissions would result in property, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiff, on behalf of all others similarly situated and the Class, demands:

> a. an order certifying the case as a class action;
>
> b. an order appointing Plaintiff as the Class Representatives of the Class;
>
> c. an order appointing undersigned counsel and their firms as counsel for the Class;
>
> d. compensatory damages;
>
> e. post judgment interest;
>
> f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;
>
> g. an award of taxable costs; and,
>
> h. any and all such further relief as this Court deems just and proper.

**COUNT X**
**FRAUDULENT CONCEALMENT**
**(Against Defendants Knauf Gips and Knauf Tianjin)**

209.     Plaintiff, Duane Ankney, individually and on behalf of all others similarly situated, repeats, reiterates and realleges paragraphs 1 through 111 of this Complaint, with the same force and effect as if fully set forth herein.

210.     At all times material hereto, Defendants misrepresented the safety of Defendants' drywall.

211.    Defendants knew, or were reckless in not knowing, that its representations were false.

212.    Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants' drywall caused corrosion to air-conditioning and refrigerator units, electrical wires and copper tubes, and caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards, and other health concerns.

213.    Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants were aware of complaints regarding defects in Defendants' drywall and did nothing.

214.    Defendants fraudulently concealed and/or intentionally omitted the fact that Defendants' drywall was negligently manufactured.

215.    Defendants were under a duty to disclose to Plaintiff and the Plaintiff Class Members, the aforementioned as it pertains to Defendants' drywall.

216.    Defendants' concealment and omissions of material facts concerning, *inter alias,* the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff, the Plaintiff Class Members and/or the consuming public into reliance and continued use of Defendants' drywall.

217.    Defendants' concealment and omissions of material facts concerning, *infer a/ia,* the negligent manufacture of Defendants' drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff, the Plaintiff Class Members and/or the consuming public into reliance and continued use of Defendants' drywall.

218.    Defendants knew that Plaintiff and the Plaintiff Class Members and/or the consuming public, had no way to determine the truth behind Defendants' concealment and

omissions and that these included material omissions of facts surrounding Defendants'
drywall as alleged herein.

219.       Plaintiff, the Plaintiff Class Members and/or the consuming public,
reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did
not include facts that were concealed and/or omitted by Defendants.

220.       As a result of the foregoing acts and omissions, Plaintiff and the Plaintiff
Class Members require and/or will require extensive reconstruction and repairs, and will
incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and
other related expenses. Plaintiff and the Plaintiff Class Members are informed and believe,
and further allege, that plaintiff and the Plaintiff Class Members will in the future be
required to pay for additional repairs and/or replacement costs, and/or medical, care,
attention, and services.

## COUNT XI
## BREACH OF EXPRESS WARRANTY
### (Against All Defendants)

221.       Plaintiff, DUANE ANKNEY, individually and on behalf of all others
similarly situated, repeats, reiterates and realleges paragraphs 1 through 111 of this
Complaint, with the same force and effect as if fully set forth herein.

222.       Defendants expressly warranted that Defendants' drywall was safe and well
accepted by homebuilders.

223.       Defendants' drywall did not conform to these express representations
because Defendants' defective drywall is defective and unsafe, and is associated with
numerous side effects. As a direct and proximate result of the breach of said warranties,
Plaintiff and the Plaintiff Class Members suffered, and/or will continue to suffer, and/or are

at an increased risk to suffer, extensive property damage, personal injuries and/or other harm.

224.    Plaintiff and the Plaintiff Class Members did rely on the express warranties of the Defendants herein.

225.    The Defendants herein breached the aforesaid express warranties, as Defendants' dry wall was defective.

226.    Defendants expressly represented to Plaintiff and the Plaintiff Class Members that Defendants' drywall are safe, efficacious, and fit for use for the purposes intended, that the Defendants' drywall arc of merchantable quality, that Defendants' drywall did not produce any dangerous side effects, and that Defendants' drywall were adequately tested and fit for its intended use.

227.    Defendants knew or should have known that the aforesaid representations and warranties are false, misleading and untrue in that Defendants' drywall are not fit for the use intended and, in fact, produced severe and extensive damage to Plaintiff's home and to the homes of the Plaintiff Class Members because Defendants' drywall was negligently manufactured.

228.    Defendants expressly represented to Plaintiff and the Plaintiff Class Members that Defendants' drywall are safe, efficacious, and fit for use for the purposes intended, that the Defendants' drywall are of merchantable quality, that Defendants' drywall did not produce any dangerous side effects, and that Defendants' drywall were adequately tested and fit for its intended use.

229.    As a result of the foregoing acts and omissions, Plaintiff and the Plaintiff Class Members require and/or will require extensive reconstruction and repairs, and will

incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiff and the Plaintiff Class Members are informed and believe, and further allege, that Plaintiff and the Plaintiff Class Members will in the future be required to pay for additional repairs and/or replacement costs, and/or medical, care, attention, and services.

**COUNT XII**
**FRAUDULENT MISREPRESENTATION**
**(Against Defendants Knauf Gips and Knauf Tianjin)**

230.     Plaintiff, DUANE ANKNEY, individually and on behalf of all others similarly situated, repeats, reiterates and realleges paragraphs 1 through 111 of this Complaint, with the same force and effect as if fully set forth herein.

231.     Defendants falsely and fraudulently represented to Plaintiff, the Plaintiff Class Members and/or the consuming public in general that Defendants' drywall had been tested and was found to be safe and/or effective for use.

232.     That representation made by Defendants was, in fact, false.

233.     When said representations were made by Defendants, upon information and belief, they knew those-representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

234.     These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiff, the Plaintiff Class Members and/or the consuming public, all of which evinced reckless, willful, indifference to the health, safety and welfare of the Plaintiff and Plaintiff Class Members herein.

235.     At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiff and Plaintiff Class Members, Defendants' drywall, the Plaintiff and

55

Plaintiff Class Members were unaware of the falsity of said representations and reasonably believed them to be true.

236.    In reliance upon said representations, the Plaintiff's and Plaintiff Class Members' homes were built using Defendants' drywall thereby sustaining damage and injury and/or being at an increased risk of sustaining damage and injury in the future.

237.    Said Defendants knew, and were aware, or should have been aware, that Defendants' drywall had not been sufficiently tested, was defectively manufactured and/or lacked adequate and/or sufficient warnings.

238.    Defendants knew, or should have known, that Defendants' drywall had a potential to, could, and would cause severe damage and injury to homeowners.

239.    Defendants brought Defendants' drywall to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiff and the Plaintiff Class Members.

240.    By reason of the foregoing, Plaintiff and the Plaintiff Class Members experienced, and/or are at risk of experiencing, financial damage and injury.

241.    As a result of the foregoing acts and omissions, Plaintiff and the Plaintiff Class Members require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental, and other related expenses. Plaintiff and the Plaintiff Class Members are informed and believe, and further allege, that Plaintiff and the Plaintiff Class Members will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

## COUNT XIXI
## PRIVATE NUISANCE

**(Against All Defendants)**

242.     Plaintiff adopts and restates paragraphs 1 through 111 as if fully set forth
herein.

243.     The Defendants' wrongful acts or omissions have caused sulfide gas and/or
other chemical leaching into Plaintiff's and Class Members' homes which has unreasonably
interfered, and continues to interfere, with the Plaintiff and Class Members' use and
enjoyment of their properties and caused them potential health problems.

244.     Defendants' interference has impaired the rights of Plaintiff and Class
Members health, comfort, safety, free use of their property, and/or peaceful enjoyment of
their property.

245.     Defendants' invasions were intentional and unreasonable, and/or
unintentional but otherwise negligent or reckless.

246.     The interference with Plaintiff and Class Members' use of their property
caused by Defendants is substantial and is ongoing.

247.     Defendants' private nuisance was the direct, proximate, and foreseeable
cause of Plaintiff and Plaintiff Class Members' damages, injuries, harm, property damage,
and increased risk of harm, which they suffered and will continue to suffer.

248.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiff
and Class Members have incurred property damage and are entitled to recover monetary
damages for: replacement/repair of their homes; the removal and replacement of all of the
drywall contained in their homes; the replacement of Other Property (air-conditioner and
refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer
wiring, personal property, electronic appliances, and other metal surfaces and household

items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

249.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred or will incur incidental and consequential damages for the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

250.    Defendants knew or should have known that their wrongful acts and omissions would result in property, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiff, on behalf of all others similarly situated and the Class, demands:

> a. an order certifying the case as a class action;
>
> b. an order appointing Plaintiff as the Class Representatives of the Class;
>
> c. an order appointing undersigned counsel and their firms as counsel for the Class;
>
> d. compensatory damages;
>
> e. post judgment interest;
>
> f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;
>
> g. an award of taxable costs; and,
>
> h. any and all such further relief as this Court deems just and proper.

## COUNT XIV
## UNJUST ENRICHMENT
### (All Defendants)

251.        Plaintiff adopts and restates paragraphs 1 through 111 as if fully set forth
herein.

252.        Defendants received monies as a result of Plaintiff and Class Members'
purchases of Defendants' defective drywall, or purchase of homes containing this drywall,
either directly or through an agent, and Defendants wrongfully accepted and retained these
benefits to the detriment of Plaintiff and Class Members.

253.        Defendants.' acceptance and retention of these benefits under the
circumstances make it inequitable and unjust for Defendants to retain the benefit without
payment of the value to the Plaintiff and the Class.

254.        Defendants, by the deliberate conduct complained of herein, have been
unjustly enriched in a manner which warrants restitution.

255.        As a direct and proximate cause of Defendants' acts and omissions, Plaintiff
and Class Members have incurred property damages and are entitled to recover monetary
damages for: replacement/repair of their homes; the removal and replacement of all of the
drywall contained in their homes; the replacement of Other Property (air-conditioner and
refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer
wiring, personal property, electronic appliances, and other metal surfaces and household
items); and the repair and/or replacement of any materials contaminated or corroded by the
drywall.

256.        As a direct and proximate cause of Defendants' acts and omissions, Plaintiff
and Class Members have incurred or will incur incidental and consequential damages for

the costs of moving while homes are being repaired; renting of comparable housing during the duration of the repairs; the loss of use and enjoyment of real property; and the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.

257.     Defendants knew or should have known that their wrongful acts and omissions would result in property, incidental, and consequential damages in the manner set forth herein.

WHEREFORE Plaintiff, on behalf of all others similarly situated and the Class, demands:

> a. an order certifying the case as a class action;
>
> b. an order appointing Plaintiff as the Class Representatives of the Class;
>
> c. an order appointing undersigned counsel and their firms as counsel for the Class;
>
> d. compensatory damages;
>
> e. post judgment interest;
>
> f. an award of attorneys' fees to class counsel based upon a common fund theory as allowed by Federal law, for the benefits conferred upon the Class and/or as allowed by contract or statute;
>
> g. an award of taxable costs; and,
>
> h. any and all such further relief as this Court deems just and proper.

## COUNT XX
## EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING
### (All Defendants)

258.     Plaintiff adopts and restates paragraphs 1-140 as if fully set forth herein.

259.     Plaintiff and the Class are without adequate remedy at law, rendering

injunctive and other equitable relief appropriate.

260.     Plaintiff and the Class will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein, and if defendants are not ordered to recall, buy back, and/or repair the plaintiff's and members of the class' homes.

261.     Plaintiff on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1) remedy, repair and/or replace the drywall in the homes, (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with, the drywall, and (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect, dangers associated with the drywall (4) create, fund, and support a medical monitoring program consistent with the requirements of Florida law.

262.     Until Defendants' defective drywall has been removed, Defendants should provide continued environmental and air monitoring in Plaintiff and Class Members' homes.

263.     Plaintiff and Class Members have been exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendants' defective drywall.

264.     The sulfides gases and the other chemicals which have been released from Defendants drywall and to which Plaintiff and Class Members have been exposed are proven hazardous, dangerous, or toxic substances.

265.     Plaintiff's and Class Members' exposures were caused by the Defendant's negligence or otherwise tortious conduct.

61

266.     Plaintiff and Class Members exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

267.     The method and means for diagnosing the Plaintiff and Class Members potential medical problems are well accepted in the medical and scientific community and will be of great benefit to the Plaintiff and Class Members by preventing or minimizing health problems that they may encounter as a result of the defective drywall.

268.     As a proximate result of their exposure to sulfide gases and other toxic chemicals from Defendants' defective drywall, Plaintiff and Class Members have developed a significantly increased risk of contracting a serious latent disease.

269.     Monitoring procedures exist that makes the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

270.     The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

WHEREFORE, Plaintiff, on behalf of all others similarly situated, demands injunctive and/or equitable relief against the Defendant as follows:

        a. an Order certifying the Class and appointing Plaintiff as Class Representatives;

        b. an order appointing Class Counsel to the represent the Class;

        c. an order and judgment requiring the necessary repairs, relocation costs, personal property replacement, establishment of environmental and. medical monitoring programs;

        d. pre judgment and post judgment interest at the maximum rate allowable at law;

e. an award of attorneys' fees to class counsel based upon a common fund theory

as allowed by Federal law,

f. for the benefits conferred upon the Class and/or as .allowed by contract or

statute;

g. the costs and disbursements incurred by Plaintiff and Class Members in

connection with this action, including reasonable attorneys' fees based on the

benefits conferred upon the Class, a common fund, statutory, and/or contractual

basis;

h. equitable, injunctive, and declaratory relief;

i. pursuant to Rule 23(b)(2) and/or Rule 23(d), Plaintiff seeks notice to Class

Members of the defective drywall in their home, need to have the home

inspected, and potential health risks associated with the drywall;

j. environmental and air monitoring;

k. medical monitoring; and such other and further relief under all applicable state

and federal law and any other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, DUANE ANKNEY, individually and on behalf of the Class Members, hereby

demands a trial by jury as to all issues so triable as a matter of right.

DATED: March 19, 2009

Kenneth G. Gilman, Esq.
Florida Bar No.: 340758
Gilman and Pastor, LLP
6363 Highcroft Drive
Naples, Florida 34119
T: (239) 598-3541
F: (239) 598-3982

*Attorney for Plaintiff*